### A99A2412. HOLDEN v. THE STATE.
(527 SE2d 237)

ELDRIDGE, Judge.

Judy Holden appeals from the Dougherty Superior Court's denial of her motion to suppress. She contends the arresting officer did not have reasonable, articulable suspicion to stop her vehicle. We find otherwise and affirm the ruling of the trial court.

The facts are viewed to support the trial court's findings[1] and are essentially undisputed. Patrol Officer R. Von Mendenhall was assigned to patrol beats 9 and 10 in the City of Albany, which included West Highland Avenue. West Highland is such a well-known drug sale location it is used by the Albany Police Department as a patrol training ground. At the time in issue, Officer Mendenhall had been patrolling the area for approximately six months, had worked several drug cases in the area, and had become familiar with the people who lived there.

Because of Mendenhall's frequent patrols of West Highland, he also became familiar with Robert Price. Price did not live in the area but frequently sold drugs on the corner of the 600 block of West Highland. Over the months, Mendenhall had "numerous" encounters with Price, who personally admitted to the officer that he sold drugs:

[1] *State v. Diamond*, 223 Ga. App. 164, 166 (477 SE2d 320) (1996).

He's a self-admitted drug dealer. He's told me he has. I've gotten information from him previously. . . . Straight out and told me that he sold cocaine. And since then — actually to put it bluntly — it's a game for the two of us. I know he's dealing. He admits he's dealing. It's just a matter of catching him dealing.

From his experience, Mendenhall knew the modus operandi of the street dealers on West Highland, including Price: Price, or another dealer, would stand on a street corner waiting for a person who wanted to buy drugs; when such a person drove up in his or her car, "they get in the vehicle and drive around the neighborhood and make the transaction in the vehicle." Mendenhall knew that Price sold drugs on the corner of the 600 block of West Highland in the early morning hours; as the officer testified, he had "knowledge of what Robert Price does in that area at that time."

On the date at issue, Mendenhall was patrolling past the corner of the 600 block of West Highland at 2:00 in the morning. Price was on the corner. A gray sport utility vehicle ("SUV") that the officer did not recognize stopped at the corner. Price got in the vehicle. The SUV was driven by appellant Judy Holden. Mendenhall passed the SUV as Price was getting in. The officer "noticed the white female driver glance at me then turn away sharply. And she appeared nervous to me at that time." Mendenhall turned his patrol car around and stopped the SUV. After initial questioning, the officer "asked for and obtained permission to search the vehicle and the contents therein."[2] Marijuana was found, and both Holden and Price were arrested. During a search of Holden's person incident to arrest, a crack cocaine pipe containing residue was found. *Held*:

The stop of a moving vehicle in order to question the occupants is an investigative detention pursuant to *Terry v. Ohio*.[3] And as such,

the officer must possess more than a subjective, unparticularized suspicion or hunch. The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.

---

[2] No issue has been raised with regard to the validity of Holden's consent to search the vehicle and its contents.

[3] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

(Citations, punctuation and emphasis omitted.) *State v. Banks*, 223 Ga. App. 838, 840 (479 SE2d 168) (1996).

Holden contends that the stop of her vehicle was based solely on the "reputation" of Robert Price and was thus unlawful. We will not pass on whether "reputation" alone would provide a sufficient basis for a *Terry* stop, because we find a much more comprehensive basis for the stop of Holden's vehicle.

Here, Officer Mendenhall's stop of Holden's SUV was based on the following: his knowledge of Robert Price as a drug dealer, which knowledge went well beyond mere "reputation," since Price personally admitted to the officer that he is a drug dealer and, in effect, dared Mendenhall to "catch" him; his knowledge that Price sells drugs specifically on the corner of the 600 block of West Highland at 2:00 in the morning, which are precisely the time and location at issue; his knowledge that Price did not live in the area and thus had little else to be doing on the corner of the 600 block of West Highland at 2:00 in the morning, save his usual occupation at that locale — selling drugs; his knowledge that Holden was not from the area but was stopping at a notorious drug sale location to pick up a drug dealer at 2:00 in the morning; his knowledge of how a street drug sale transpires, which is precisely the act he saw before him; and his observation of Holden's nervous reaction when she saw him drive by in his patrol car. These are objective, specific, articulable factors that raise the reasonable inference Holden and Price were engaging in or about to engage in a drug sale. Officer Mendenhall was not obliged to ignore these facts simply because he did not see drugs exchange hands before making his brief investigatory stop. *Lewis v. State*, 233 Ga. App. 560 (1) (504 SE2d 732) (1998); *State v. Barnes*, 210 Ga. App. 654 (436 SE2d 798) (1993).

In determining whether a stop was justified by reasonable suspicion,

> the totality of the circumstances — the whole picture — must be taken into account. . . . The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions — inferences and deductions that might well elude an untrained person.

*United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981). In this case, the specific data and patterns known to Officer Mendenhall and the reasonable inferences he was entitled to draw from them established a reasonable, articulable suspicion for

an investigative stop of Holden's SUV. The trial court did not err in denying her motion to suppress on that basis.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED DECEMBER 15, 1999.

*Christopher S. Warren*, for appellant.
*Kenneth B. Hodges III, District Attorney, Sadhana Pandey, Assistant District Attorney*, for appellee.